UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARLENE L. SWISHER, | ) | CASE NO. 1:09 CV 939 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE NUGENT |
| v. | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Darlene Swisher's applications for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION and PROCEDURAL HISTORY

Plaintiff Darlene Swisher filed applications for supplemental security income benefits and disability insurance benefits on September 23, 2005 (Tr. 104-106, 107-109). She alleged disability beginning July 1, 2005, due to diverticulitis with perforation (Tr. 131). Born March 3, 1955 (tr. 104,

107), Plaintiff was 53 years old at the time of the ALJ's 2008 decision, and "closely approaching advanced age" for the purposes of the social security regulations. *See* 20 C.F.R. §§404.1563 and 416.963. She has an eleventh grade education (tr. 23), and has past work experience as a cook and a sandblaster (Tr. 122). She left her sandblaster job on January 31, 2005, collected unemployment benefits for several months (tr. 14), and was unemployed through her alleged onset date of July 1 (Tr.14, 131). Plaintiff then had surgery for a colostomy and Hartmann's pouch procedure on August 21, 2005, and was in the hospital until September 8 (Tr. 15). At that point, she was discharged to a skilled nursing facility for about a month (Tr. 203, 245). She later had surgery to reverse these procedures on July 10, 2006 (Tr. 292).

Plaintiff's applications for benefits were denied initially (tr. 55-60) and upon reconsideration (Tr. 61-74). She requested a hearing (tr. 75) and, on May 19, 2008, appeared with counsel and testified before Administrative Law Judge William Manico ("the ALJ") (Tr. 22-39). Also present was vocational expert Bruce Holderead, who answered a few general questions but did not testify with respect to Plaintiff's residual functional capacity ("RFC") (Tr. 27-28). On August 25, 2008, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled (Tr. 12-19). He found at Step Four of the five-step sequential evaluation[1] that Plaintiff had the RFC to perform a light range

---

[1]The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If claimant is not doing substantial gainful activity and is suffering from a severe

-2-

of work, with the limitation that she have the option to either stand or sit (Tr. 17).  Consequently, the ALJ found that this RFC would allow her to perform her past relevant work as a sandblaster (Tr. 18).  Plaintiff requested review from the Appeals Council (tr. 5-7) but it denied her request, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 1-4).  On appeal, Plaintiff claims the ALJ's decision is not supported by substantial evidence.

## II.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance benefits and Supplemental Security Income only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505 and 416.905.

## III.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial

---

impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)  If claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)  Even if claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. See *Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. See *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. See *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. See *Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. See *Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

I.     **Whether the ALJ Erred in Discounting the Credibility of Plaintiff's Subjective Complaints of Back Pain**

Plaintiff argues that the ALJ was not justified in finding that she was not fully credible. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so," *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). In ascertaining a claimant's credibility with regard to her subjective complaints of pain, an ALJ will follow a two-prong test: "[f]irst, we examine

-4-

whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Factors the ALJ will consider in determining a claimant's credibility include 1) her daily activities, 2) the location, duration, frequency, and intensity of her pain, 3) its precipitating and aggravating factors, 4) the type, dosage, and effectiveness of any medication she takes or has taken, 5) treatment that she has received, other than medication, 6) other measures she uses to relieve pain, and 7) other factors concerning her limitations or restrictions. See *Felisky*, 35 F.3d at 1038.

      The ALJ's analysis reflects that he applied the appropriate framework in assessing the credibility of Plaintiff's subjective complaints of pain. He relied on Plaintiff's complaints of back and joint pain to reach the second prong of his *Duncan* analysis (Tr. 15). He then found that "[s]he reports symptoms which are beyond that which can reasonably be expected from the objective medical evidence of record and her medical conditions" (Tr. 17). The ALJ then listed his reasons for rejecting Plaintiff's credibility and explained them. He discounted her credibility based on the objective medical evidence, the medication she reported taking, and her testimony regarding her medical condition and her reasons for leaving her job (Tr. 16-17).

      The ALJ found that Plaintiff's testimony about the intensity of her pain was not fully credible based in part on the objective medical evidence. For example, the ALJ pointed to Dr. Sioson's report, which indicated that "[s]he had no neck or back tenderness ... [and] no gross radiculopathy, deformity or inflammatory changes in her joints" (Tr. 255). The ALJ also noted that Plaintiff had

"no muscle atrophy, no sensory changes, no reflex abnormalities, no cerebellar signs, no Romberg's signs and no arm drift" (Tr. 16). He further noted that "straight-leg-raising on sitting was negative and on laying the claimant complained of thigh and knee, but not back, pain" (Id.). The ALJ did not find that this objective evidence supported Plaintiff's subjective complaints of pain or that her complaints were consistent (Tr. 16-17).

In considering the relevant *Felisky* factors, the ALJ noted that "she does some household chores with her boyfriend helping out," and that she can "dress, groom, bath[e], button, tie and grasp" (Tr. 16). He also noted that she reported having cramping a few times a day (tr. 15) and that she needs to lie down frequently because of her back pain (Tr. 16). The ALJ also stated that he gave little weight to Plaintiff's use of a cane because it "is not medically indicated according to the record" (Tr. 17). Plaintiff contends that the ALJ made an independent medical determination in finding that she did not need to use a cane or walker. However, the medical record in fact does not reflect that Plaintiff ever was prescribed a cane. Furthermore, Plaintiff testified that she can stand for 20 minutes before she has to use her cane (Tr. 36).[2] The ALJ credited Plaintiff's testimony that she could stand for 20 minutes, as he found it consistent with the medical record and the opinion of Dr. Shenk that she can stand for 15 to 20 minutes (Tr. 251). The ALJ's RFC assessment also includes an option to stand or sit. Plaintiff does not adequately explain why this RFC fails to accommodate Plaintiff's own assertions regarding her ability to stand.

The ALJ noted that Plaintiff reported taking Lansoprazole, Metropolol, Percocet, and Tylenol in one undated disability report (tr. 16, 135), and in another undated report she mentioned taking

---

[2]The Court notes that Plaintiff's brief mischaracterized her testimony somewhat. As noted, Plaintiff testified that she can stand for 20 minutes before using a cane (Tr. 36). Plaintiff's brief asserts that Plaintiff "has to use a cane while standing." (Doc. 13, at 8).

-6-

Docusate Sodium, Hydroxyzine, Metropolol, and Prevacid (Tr. 16, 150). At the hearing, she testified that she had no prescriptions and was only taking over the counter Tylenol for her pain (Tr. 29). The ALJ found that these reports were in conflict with each other (Tr. 16-17). Plaintiff asserted at the hearing that she does not have medical insurance and cannot afford to see a doctor or pay for prescriptions (Tr. 37). Courts have recognized that an ALJ should not discount a plaintiff's credibility based on her inability to seek treatment due to a lack of insurance. *See Green v. Comm'r of Soc. Sec.*, No. 07-12787-BC, 2008 WL 4449854, at *9 (E.D.Mich., Oct. 2, 2008) (The fact that "Plaintiff sought essentially no treatment ... is not a basis for discounting Plaintiff's credibility, in light of the evidence that Plaintiff did not have medical insurance during this time"); *see also Blakeman v. Astrue*, 509 F.3d 878, 888 (8th Cir. 2007) ("An ALJ must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering ... information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"). Plaintiff testified that at the time of her surgeries and while she was in the hospital she was on Medicaid, but that since then "they took [her] off of it" (Tr. 37-38). She contends that due to her current lack of insurance, "[t]he only thing she can take for pain is extra strength Tylenol." (Doc. 13, at 6). She also contends, however, that the "lists of her medications demonstrate a gradual decrease in her need for prescribed medications." (Id.). At the time she visited Dr. Sioson, she reported taking no medication (tr. 254), and she had surgery to reverse her colostomy a week later (Tr. 292). The fact that Plaintiff was able to undergo reversal surgery a week after reporting taking no medication calls into question her assertion that the reason she did not take medication was a lack of insurance. Furthermore, according to Plaintiff's own brief, her lack of medication suggests that her condition has improved since the time she was

taking a number of different prescription medications. (Doc. 13, at 6).

Other evidence also supports the notion that Plaintiff's condition has improved. The ALJ noted that in a phone conversation with a social security agency worker, Plaintiff said that she was trying to do exercises and feeling stronger (Tr. 16, 146). He also noted that "she asserted she is very weak, can barely talk, and cannot do 'anything,'" (Tr. 16, 134). Plaintiff indicates that she reported her most severe symptoms as the reason she initially went to the hospital in August, 2005, and she reported the improvements over six months later, well after her surgery and her release from the hospital and the skilled nursing facility. (Doc. 13, at 6). She argues that these statements "do not provide support for the ALJ's conclusion that Ms. Swisher has provided conflicting accounts of her limitations." (Id.). The Court agrees with Plaintiff that these "contradictory" statements, as framed by the ALJ, do not provide support for discounting Plaintiff's credibility because they are not contradictory. However, the reports do suggest a marked improvement in Plaintiff's condition, and Plaintiff admits as much. (Id.). Plaintiff's improvement also coincides with a post-surgery report from Dr. Shenk's staff, indicating "no barriers" to her achievement of her long-term goals with regards to regaining her pre-surgery level of mobility (Tr. 234). This evidence suggesting extensive improvement post-surgery weighs against Plaintiff's assertions that her symptoms render her disabled. While the ALJ incorrectly handled these particular agency reports, they were not his only basis for discounting Plaintiff's credibility. He justifiably identified numerous other factors that provided him valid reasons to find that Plaintiff was less than fully credible.

The ALJ further discounted Plaintiff's credibility based on the different statements she gave about why she left her job as a sandblaster. She has stated that she was laid off (tr. 30), that she left after an argument with her supervisor (tr. 146), and that she does not remember why she left (Tr.

131). The ALJ found that these "conflicting [statements] detract considerably from her credibility" (Tr. 17). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence," *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Here, Plaintiff's statements, while not completely contradictory and not related to her medical condition, still reflect either inconsistency or a faulty memory. The ALJ considered the entire record and cited substantial support for his credibility determination. In light of all the factors, the ALJ was justified in finding that Plaintiff's subjective complaints of disabling pain were not fully credible.

## II. Whether the ALJ Erred in Crediting the Opinion of Treating Physician Shenk Over the Opinions of Agency Physicians Hinzman and Sioson

Plaintiff argues that the ALJ arbitrarily discounted the opinion of examining agency program physician Dr. Eulogio Sioson. Plaintiff does not have an extensive history of doctor visits, although Dr. Robert Shenk treated her from the time she reported to the hospital on August 20, 2005, until February 9, 2006 (Tr. 250). Dr. Shenk completed a disability report on March 2, 2006, stating that Plaintiff was "[u]nable to stand for more than 15-20 minutes," was fatigued and would have some difficulty bending, but that she could lift, grasp, and sit (Tr. 251). Non-examining state agency physician Dr. Gary Hinzman reviewed Plaintiff's medical records and submitted a report on March 10, 2006. He opined that she was healing and that her fatigue and de-conditioning from surgery were not expected to last for 12 months (Tr. 252). Then on July 3, 2006, Plaintiff visited Dr. Sioson, who opined that Plaintiff would be "significantly limited if not precluded" from walking, standing, lifting, and carrying, based on the after-effects of her surgery, and her back and joint pain (Tr. 254-55).

An ALJ "will give more weight to opinions from [a claimant's] treating sources." 20 C.F.R.

§404.1527(d)(2). A "treating source" is a "medical source who provides ... medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [a claimant]." 20 C.F.R. §404.1502. Dr. Shenk was the attending physician at the hospital. He and his residents observed and reported on Plaintiff's condition almost daily between her surgery on August 20, 2005, and her release on September 8 (Tr. 213-33). Plaintiff submitted a Function Report, indicating that after her surgery she had a once-a-month ongoing treating relationship with Dr. Shenk (Tr. 141). Further, she classifies Dr. Shenk as her "treating physician" in her brief. (Doc. 13, at 6, 7). Her Function Report is dated January 5, 2006 (tr. 138), and she visited Dr. Shenk until February 9, 2006 (Tr. 250). This suggests that, after Plaintiff's daily examinations and subsequent release from the hospital, she would have visited Dr. Shenk approximately four or five additional times. Generally it takes more than just a few visits to establish a treating relationship. See *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 507 (6th Cir. 2006) ("depending on the circumstances and the nature of the alleged condition, two or three visits will often not suffice for an ongoing treatment relationship"). The "treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records," *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Here, it appears that Dr. Shenk's relationship with Plaintiff was significant enough to qualify as "ongoing," as Plaintiff visited Dr. Shenk several times over the course of several months for surgical treatment and follow-up. Moreover, under the regulations, even if Dr. Shenk did not rise to the level of "treating," the ALJ was justified in giving his opinion more weight than that of Dr. Sioson, who had only examined her once. Accordingly, the ALJ was justified in crediting Dr. Shenk's opinion with

regards to Plaintiff's ability to lift, grasp, and sit.

An ALJ must give good reasons for discounting the opinion of a treating physician. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). He is required to consider all the medical opinions in the case record. *See* 20 C.F.R. §404.1527(b). He is not required, however, to give good reasons for why he discounted the opinions of non-treating examining sources such as Dr. Sioson, as long as he considers them. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("the SSA requires an ALJ to give reasons for only *treating* sources") (emphasis in original). In this case, the ALJ's written decision reflects that he considered all the medical opinions. The ALJ also explained why he discounted the opinions of the agency physicians. He wrote that they were in conflict with each other and were not supported by the claimant's testimony or the medical record (Tr. 18). Dr. Hinzman opined that Plaintiff's fatigue and de-conditioning would not last 12 months (tr. 252), while Dr. Sioson wrote that "her ability to do work related activities ... would be significantly limited if not precluded at this time (Tr. 255). While these limited reports address different time periods and therefore do not necessarily conflict with each other, the ALJ was still justified in giving them little weight, based on their inconsistency with the medical record and their status as opinions from non-treating physicians.

The ALJ was justified in discounting the report of Dr. Hinzman. Dr. Hinzman did not examine Plaintiff. An ALJ will "give more weight to the opinion of a source who has examined [a claimant] than to the opinion of a source who has not examined [a claimant]." 20 C.F.R. §404.1527(d)(1). Moreover, Dr. Hinzman's report was only four sentences long and somewhat conclusory (*see* Tr. 252). He simply restated the objective facts from the report he reviewed, and did not explain why he believed that Plaintiff's symptoms would not last 12 months. (Id.). The ALJ

was also justified in discounting the opinion of Dr. Sioson. Dr. Sioson only saw Plaintiff once. Further, the ALJ found that Dr. Shenk's opinions were more consistent than Dr. Sioson's with regard to Plaintiff's testimony and the medical evidence on record (Tr. 18). Dr. Sioson noted that although Plaintiff "has been having back pains for 12 years[,] [s]he has no specific injury and has no history of herniated discs" (Tr. 254). He also found "no gross radiculopathy, deformity or inflammatory changes in her joints" (Tr. 255). The ALJ noted that Dr. Sioson observed that Plaintiff "walked with a slight limp and was unsteady ... [however she did not] have knee tenderness or instability" (Tr. 16). This lack of tenderness and instability, combined with the largely normal muscle and range of motion tests (tr. 257-60) gave the ALJ further reason to believe that Plaintiff's reported symptoms were beyond what could be expected from a patient with her objective medical record (Tr. 17). Based on the above, the Court finds that the ALJ's decision to credit the opinion of treating physician Dr. Shenk over that of examining physician Dr. Sioson was appropriate under the regulations and well within his "zone of choice." See *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[t]here is a 'zone of choice' within which the Commissioner can act, without the fear of court interference.")

**III. Whether the ALJ had Substantial Evidence to Determine That Plaintiff Retained the RFC to Perform a Limited Range of Light Work**

Plaintiff argues that the ALJ did not have substantial evidence to determine that she could perform light work. A "light work" RFC involves lifting up to 20 pounds sometimes or 10 pounds frequently, regularly walking or standing, or longer periods of sitting with pushing or pulling of arm or leg controls. 20 C.F.R. §404.1567(b). Plaintiff testified that her past job required her to lift up to 16 or 17 pounds (tr. 32), but that now she cannot lift ten pounds (Tr. 35). She further testified that she has to lie down every half hour or so for her back pain (Tr. 37). The ALJ found, however, that

-12-

she can "lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently" (Tr. 18).  He "credit[ed] Dr. Shenk's assessment of the claimant's [RFC]" with respect to her limitations on standing and lifting (Tr. 18).  He noted that Dr. Shenk opined that Plaintiff could lift and grasp, but would not be able to stand for long periods of time (Tr. 18, 251).  Plaintiff had testified that her sandblaster job allowed her to alternate sitting and standing at will (Tr. 30).  When asked why she would be unable to return to her job, she testified that the only reason was that she got laid off (Id.).  Although she later testified that her restrictions would preclude her from performing some of the lifting requirements of her past work (tr. 34-35), the ALJ did not find that she was fully credible in that respect (Tr. 16-17).  Consequently, the ALJ relied on the opinion of Plaintiff's treating physician, Dr. Shenk, to find that Plaintiff retained the RFC for light work with an option to sit or stand, which would allow her to return to her job as a sandblaster.

     Plaintiff contends that in making this RFC determination the ALJ did not consider Dr. Shenk's finding that she still had fatigue.  Plaintiff suggests that her fatigue is incompatible with a light work RFC.  As noted above, Dr. Shenk found that Plaintiff had fatigue, but that she still could stand for up to 20 minutes, and that she retained the ability to lift and grasp (Tr. 251).  Plaintiff argues that her fatigue and her ability to stand for only a short time would not be compatible with a full range of light work.  However, the ALJ did not find that Plaintiff retained the capacity for a full range of light work; rather, the ALJ modified the light work RFC to include an option to sit or stand.  Plaintiff does not explain why this RFC determination fails to accommodate her fatigue and limited ability to stand, as Dr. Shenk and Plaintiff herself described them.

     Plaintiff also argues that the ALJ's RFC finding does not accommodate her back pain.  Plaintiff's back pain apparently never precluded her from doing the requisite lifting and walking for

-13-

her job before her surgery. Yet, she has alleged that this pain began over ten years prior to her onset date in July of 2005 (Tr. 15, 254). Plaintiff does not advance any evidence of disabling back problems, nor does she advance evidence that surgery for her colostomy and diverticulitis would aggravate her back pain to the point that she would have to lie down. Because the ALJ decided this case at step four of the five-step sequential evaluation, the burden of proof remains on Plaintiff. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing past relevant work"). The ALJ determined that Plaintiff was not fully credible so her testimony alone, in the absence of medical evidence, does not serve to support her claim of disability. *See Duncan*, 801 F.2d at 852. Because Plaintiff has not satisfied her burden with objective evidence, the ALJ was justified in crediting Dr. Shenk's assessment that she can stand for 20 minutes and lift, and was therefore justified in finding that she retains the RFC for limited light work, which would allow her to perform her prior job as a sandblaster.

While there may be some evidence in the record to support a finding of disability, "[t]here is a 'zone of choice' within which the Commissioner can act, without the fear of court interference," *Buxton*, 246 F.3d at 773. "If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion," *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007). In this case, the ALJ came to appropriate conclusions regarding Plaintiff's credibility, the opinions of her doctors, and the medical evidence. Because Plaintiff has not met her burden of proof, the ALJ was justified in his finding of non-disability.

## V. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner that Plaintiff is not disabled is supported by substantial evidence. Accordingly, the Court recommends that the decision of the Commissioner be affirmed.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: April 5, 2010.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time may constitute a WAIVER of the right to appeal the Magistrate Judge's recommendation.